# UNIVERSITY OF TENNESSEE ET AL. *v.* ELLIOTT

No. 85–588.   Argued April 21, 1986—Decided July 7, 1986

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and POWELL, REHNQUIST, and O'CONNOR, JJ., joined, and in Parts I, II, and III of which BRENNAN, BLACKMUN, and STEVENS, JJ., joined. STEVENS, J., filed an opinion concurring in part and dissenting in part, in which BRENNAN and BLACKMUN, JJ., joined, *post*, p. 799. MARSHALL, J., took no part in the consideration or decision of the case.

*Beauchamp E. Brogan* argued the cause for petitioners. With him on the briefs were *Alan M. Parker, Catherine S. Mizell, G. Ray Bratton, N. Richard Glassman, John Barry Burgess, Tommy Coley, pro se,* and *W. J. Michael Cody,* Attorney General of Tennessee.

*Ronald L. Ellis* argued the cause for respondent. With him on the brief were *Julius LeVonne Chambers, Eric Schnapper, Judith Reed,* and *Richard H. Dinkins.**

*Briefs of *amici curiae* urging reversal were filed for the State of Kansas et al. by *Robert T. Stephan,* Attorney General of Kansas, and *David D. Plinsky,* Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows, *Charles A. Graddick* of Alabama, *Robert K. Corbin* of Arizona, *Joseph I. Lieberman* of Connecticut, *Jim*

JUSTICE WHITE delivered the opinion of the Court.

A state Administrative Law Judge determined that petitioner University of Tennessee (hereafter petitioner or University) was not motivated by racial prejudice in seeking to discharge respondent. The question presented is whether this finding is entitled to preclusive effect in federal court, where respondent has raised discrimination claims under various civil rights laws, including Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, and 42 U. S. C. § 1983.

## I

In 1981, petitioner informed respondent, a black employee of the University's Agricultural Extension Service, that he would be discharged for inadequate work performance and misconduct on the job. Respondent requested a hearing under the Tennessee Uniform Administrative Procedures Act, Tenn. Code Ann. § 4–5–101 *et seq.* (1985), to contest his proposed termination. Prior to the start of the hearing, respondent also filed suit in the United States District Court for the Western District of Tennessee, alleging that his proposed discharge was racially motivated and seeking relief under Title VII and other civil rights statutes, including 42

*Smith* of Florida, *Richard Opper* of Guam, *Corinne Watanabe* of Hawaii, *James T. Jones* of Idaho, *Neil F. Hartigan* of Illinios, *Linley E. Pearson* of Indiana, *William J. Guste, Jr.*, of Louisiana, *James E. Tierney* of Maine, *Stephen H. Sachs* of Maryland, *Francis X. Bellotti* of Massachusetts, *Edward L. Pittman* of Mississippi, *William L. Webster* of Missouri, *Robert M. Spire* of Nebraska, *W. Cary Edwards* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Michael Turpen* of Oklahoma, *LeRoy S. Zimmerman* of Pennsylvania, *David L. Wilkinson* of Utah, *Michael Dunston* of The Virgin Islands, *Bronson C. La Follette* of Wisconsin, and *A. G. McClintock* of Wyoming; and for the Equal Employment Advisory Council by *Robert E. Williams* and *Douglas S. McDowell.*

*Solicitor General Fried, Deputy Solicitor General Kuhl, Johnny J. Butler, Gwendolyn Young Reams, Vella M. Fink,* and *Mark S. Flynn* filed a brief for the Equal Employment Opportunity Commission as *amicus curiae* urging affirmance.

U. S. C. § 1983.[1] The relief sought included damages, an injunction prohibiting respondent's discharge, and classwide relief from alleged patterns of discrimination by petitioner.

The District Court initially entered a temporary restraining order prohibiting the University from taking any job action against respondent, but later lifted this order and permitted the state administrative proceeding to go forward. App. to Pet. for Cert. A27. There followed a hearing at which an administrative assistant to the University's Vice President for Agriculture presided as an Administrative Law Judge (ALJ). The focus of the hearing was on 10 particular charges that the University gave as grounds for respondent's discharge. Respondent denied these charges, which he contended were motivated by racial prejudice, and also argued that the University's subjecting him to the charges violated his rights under the Constitution, Title VII, and other federal statutes. The ALJ held that he lacked jurisdiction to adjudicate respondent's federal civil rights claims, but did allow respondent to present, as an affirmative defense, evidence that the charges against him were actually motivated by racial prejudice and hence not a proper basis for his proposed discharge. *Id.*, at A44–45.

After hearing extensive evidence,[2] the ALJ found that the University had proved some but not all of the charges against respondent, and that the charges were not racially motivated. *Id.*, at A177–179. Concluding that the proposed discharge of respondent was too severe a penalty, the ALJ ordered him transferred to a new assignment with supervisors other than those with whom he had experienced conflicts. *Id.*, at A179–181. Respondent appealed to the University's

---

[1] Respondent's complaint also included claims under 42 U. S. C. §§ 1981, 1985, 1986, and 1988, as well as the First, Thirteenth, and Fourteenth Amendments. App. 17.

[2] The hearing continued intermittently for more than five months, involved more than 100 witnesses and 150 exhibits, and generated over 5,000 pages of transcript. App. to Pet. for Cert. A27.

Vice President for Agriculture, who affirmed the ALJ's ruling. *Id.*, at A33–35. The Vice President stated that his review of the record persuaded him that the proposed discharge of respondent had not been racially motivated. *Id.*, at A34.

Respondent did not seek review of these administrative proceedings in the Tennessee courts; instead, he returned to federal court to pursue his civil rights claims. There, petitioner moved for summary judgment on the ground that respondent's suit was an improper collateral attack on the ALJ's ruling, which petitioner contended was entitled to preclusive effect. The District Court agreed, holding that the civil rights statutes on which respondent relied "were not intended to afford the plaintiff a means of relitigating what plaintiff has heretofore litigated over a five-month period." *Id.*, at A32.

Respondent appealed to the United States Court of Appeals for the Sixth Circuit, which reversed the District Court's judgment. 766 F. 2d 982 (1985). As regards respondent's Title VII claim, the Court of Appeals looked for guidance to our decision in *Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461 (1982).[3] While *Kremer* teaches that final state-court judgments are entitled to full faith and credit in Title VII actions, it indicates that unreviewed determinations by state agencies stand on a different footing. The

---

[3] In *Kremer*, an employee filed a Title VII discrimination charge with the Equal Employment Opportunity Commission, which pursuant to 42 U. S. C. § 2000e–5 referred the case to the New York State Division of Human Rights, the agency charged with administering the State's employment discrimination laws. The state agency rejected the employee's discrimination claim, a judgment that was affirmed both at the agency appellate level and by a reviewing state court. The employee then brought a Title VII action, in which the employer raised a res judicata defense. This Court held that under 28 U. S. C. § 1738 the state court's judgment affirming the state agency's finding of no discrimination was entitled to preclusive effect in the employee's Title VII action.

Sixth Circuit found the following passage from *Kremer* directly on point:

> "EEOC review [pursuant to 42 U. S. C. § 2000e–5(b)] of discrimination charges previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions. *Batiste* v. *Furnco Constr. Corp.*, 503 F. 2d 447, 450, n. 1 (CA7 1974), cert. denied, 420 U. S. 928 (1975). Nor is it plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts. *Garner* v. *Giarrusso*, 571 F. 2d 1330 (CA5 1978), *Batiste* v. *Furnco Constr. Corp.*, *supra; Cooper* v. *Philip Morris, Inc.*, 464 F. 2d 9 (CA6 1972); *Voutsis* v. *Union Carbide Corp.*, 452 F. 2d 889 (CA2 1971), cert. denied, 406 U. S. 918 (1972)." *Id.*, at 470, n. 7.

The court accordingly held that res judicata did not foreclose a trial *de novo* on respondent's Title VII claim.

The Sixth Circuit found the question of applying preclusion principles to respondent's claims under § 1983 and other civil rights statutes a more difficult question. It held that 28 U. S. C. § 1738,[4] which concerns the preclusive effect of "ju-

---

[4] Title 28 U. S. C. § 1738 provides in pertinent part:

"The records and judicial proceedings of any court of any . . . State, Territory or Possession [of the United States], or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such . . . records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the

dicial proceedings of any [state] court," does not require that federal courts be bound by the unreviewed findings of state administrative agencies. The court also declined to fashion a federal common law of preclusion, declaring that "[a]t least implicit in the legislative history of section 1983 is the recognition that state determination of issues relevant to constitutional adjudication is not an adequate substitute for full access to federal court." 766 F. 2d, at 992. The court recognized that a similar argument for denying res judicata effect to state-court judgments in subsequent § 1983 actions was rejected in *Allen* v. *McCurry*, 449 U. S. 90 (1980), and *Migra* v. *Warren City School District Board of Education*, 465 U. S. 75 (1984), but distinguished those cases as based on the explicit command of § 1738.

We granted certiorari to consider petitioner's contention that the Sixth Circuit erred in holding that state administrative factfinding is never entitled to preclusive effect in actions under Title VII or the Reconstruction civil rights statutes. 474 U. S. 1004 (1985).

## II

Title 28 U. S. C. § 1738 governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to the unreviewed state administrative factfinding at issue in this case. However, we have frequently fashioned federal common-law rules of preclusion in the absence of a governing statute. See, *e. g.*, *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322 (1979); *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation*, 402 U. S. 313 (1971); *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U. S. 371 (1940); *Stoll* v. *Gottlieb*, 305 U. S. 165 (1938); *Gunter* v. *Atlantic Coast Line R. Co.*, 200 U. S. 273, 289–291 (1906). Although § 1738 is a governing statute with

United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

regard to the judgments and records of state courts, because § 1738 antedates the development of administrative agencies it clearly does not represent a congressional determination that the decisions of state administrative agencies should not be given preclusive effect. Accordingly, we will consider whether a rule of preclusion is appropriate, first with respect to respondent's Title VII claim, and next with respect to his claims under the Constitution and the Reconstruction civil rights statutes.

## III

Under 42 U. S. C. § 2000e–5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law." As we noted in *Kremer*, 456 U. S., at 470, n. 7, it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court.

Moreover, our decision in *Chandler* v. *Roudebush*, 425 U. S. 840 (1976), strongly supports respondent's contention that Congress intended one in his position to have a trial *de novo* on his Title VII claim. In *Chandler*, we held that a federal employee whose discrimination claim was rejected by her employing agency after an administrative hearing was entitled to a trial *de novo* in federal court on her Title VII claim. After reviewing in considerable detail the language of Title VII and the history of the 1972 amendments to the statute, we concluded:

"The legislative history of the 1972 amendments reinforces the plain meaning of the statute and confirms that Congress intended to accord federal employees the same right to a trial *de novo* [following administrative proceedings] as is enjoyed by private-sector employees and employees of state governments and political sub-

divisions under the amended Civil Rights Act of 1964."
*Id.*, at 848.

Like the plaintiff in *Chandler*, the respondent in this case pursued his Title VII action following an administrative proceeding at which the employing agency rejected a discrimination claim. It would be contrary to the rationale of *Chandler* to apply res judicata to deny respondent a trial *de novo* on his Title VII claim.

Invoking the presumption against implied repeal, petitioner distinguishes *Chandler* as involving a *federal* agency determination not entitled to full faith and credit under § 1738. Reply Brief for Petitioners 16. This argument is based on the erroneous premise that § 1738 applies to state administrative proceedings. See Part II, *supra*. The question actually before us is whether a common-law rule of preclusion would be consistent with Congress' intent in enacting Title VII. On the basis of our analysis in *Kremer* and *Chandler* of the language and legislative history of Title VII, we conclude that the Sixth Circuit correctly held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims.[5]

## IV

This Court has held that § 1738 requires that state-court judgments be given both issue and claim preclusive effect in subsequent actions under 42 U. S. C. § 1983. *Allen* v. *McCurry*, *supra* (issue preclusion); *Migra* v. *Warren City School District Board of Education*, *supra* (claim preclusion). Those decisions are not controlling in this case, where § 1738 does not apply; nonetheless, they support the view that Con-

---

[5] The fact that respondent requested the administrative hearing rather than being compelled to participate in it does not weigh in favor of preclusion. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 48 (1974) (footnote omitted).

gress, in enacting the Reconstruction civil rights statutes, did not intend to create an exception to general rules of preclusion. As we stated in *Allen:*

"[N]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U. S. C. § 1738. . . .

"Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." 449 U. S., at 97–98.

The Court's discussion in *Allen* suggests that it would have reached the same result even in the absence of § 1738. We also see no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century.

We have previously recognized that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity. In a unanimous decision in *United States* v. *Utah Construction & Mining Co.,* 384 U. S. 394 (1966), we held that the factfinding of the Advisory Board of Contract Appeals was binding in a subsequent action in the Court of Claims involving a contract dispute between the same parties. We explained:

"Although the decision here rests upon the agreement of the parties as modified by the Wunderlich Act, we note that the result we reach is harmonious with general principles of collateral estoppel. Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and re-

solves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.*, at 421–422 (1966) (footnotes omitted).

Thus, *Utah Construction*, which we subsequently approved in *Kremer* v. *Chemical Construction Co.*, 456 U. S., at 484–485, n. 26, teaches that giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose.[6] This value, which encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources, *Allen* v. *McCurry*, 449 U. S., at 94, is equally implicated whether factfinding is done by a federal or state agency.

Having federal courts give preclusive effect to the factfinding of state administrative tribunals also serves the value of federalism. Significantly, all of the opinions in *Thomas* v. *Washington Gas Light Co.*, 448 U. S. 261 (1980), express the view that the Full Faith and Credit Clause compels the States to give preclusive effect to the factfindings of an administrative tribunal in a sister State. *Id.*, at 281 (opinion of

---

[6] As one respected authority on administrative law has observed:

"The law of res judicata, much more than most other segments of law, has rhyme, reason, and rhythm—something in common with good poetry. Its inner logic is rather satisfying. It consists entirely of an elaboration of the obvious principle that a controversy should be resolved once, not more than once. The principle is as much needed for administrative decisions as for judicial decisions. To the extent that administrative adjudications resemble courts' decisions—a very great extent—the law worked out for courts does and should apply to agencies." 4 K. Davis, Administrative Law Treatise § 21.9, p. 78 (2d ed. 1983).

The Restatement (Second) of Judgments § 83, p. 269 (1982), reaches a similar conclusion:

"Where an administrative forum has the essential procedural characteristics of a court, . . . its determinations should be accorded the same finality that is accorded the judgment of a court. The importance of bringing a legal controversy to conclusion is generally no less when the tribunal is an administrative tribunal than when it is a court."

STEVENS, J.); 287–289 (WHITE, J., concurring in judgment); 291–292 (REHNQUIST, J., dissenting). The Full Faith and Credit Clause is of course not binding on federal courts, but we can certainly look to the policies underlying the Clause in fashioning federal common-law rules of preclusion. "Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force," *id.*, at 289 (WHITE, J., concurring in judgment), and this purpose is served by giving preclusive effect to state administrative factfinding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results.[7] Accordingly, we hold that when a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *Utah Construction & Mining Co., supra*, at 422, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.[8]

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL took no part in the consideration or decision of this case.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, concurring in part and dissenting in part.

An administrative assistant to the Vice President for Agriculture of the University of Tennessee conducted a hearing

---

[7] Congress of course may decide, as it did in enacting Title VII, that other values outweigh the policy of according finality to state administrative factfinding. See Part III, *supra*.

[8] Respondent argues against preclusion on the grounds that the administrative hearing in this case did not satisfy the standard set out in *Utah Construction & Mining Co.*, Brief for Respondent 39–76, and that the ALJ's factfinding would not be given preclusive effect in the Tennessee courts, *id.*, at 99–105. These contentions were not passed upon below, and we leave them for resolution on remand.

and determined that respondent's proposed discharge was not racially motivated. The Court today correctly holds that 28 U. S. C. § 1738 does not require that this determination by an administrative assistant be given full faith and credit in subsequent federal litigation. The Court also correctly refuses to fashion a federal common-law rule of preclusion that would bar respondent from litigating his claim against the University under Title VII of the Civil Rights Act of 1964. I agree with these conclusions and therefore join Parts I, II, and III of the Court's opinion.

In Part IV of its opinion, however, the Court concludes that the findings of the administrative assistant may bar respondent's claims under 42 U. S. C. § 1983 and other of the Reconstruction-era Civil Rights Acts. Although its reading of the legislative history of the 1964 Civil Rights Act persuades the Court that it should not interpose a judicially created bar to the cause of action authorized by that statute, it creates such a bar to claims authorized by the earlier Civil Rights Acts without even mentioning the concerns that prompted their enactment. As a consequence, the Court's analysis is incomplete and ultimately unconvincing.

Preclusion of claims brought under the post-Civil War Acts does not advance the objectives typically associated with finality or federalism. In the employment setting which concerns us here, precluding civil rights claims based on the Reconstruction-era statutes fails to conserve the resources of either the litigants or the courts, because the complainant's companion Title VII claim will still go to federal court under today's decision.[1] Nor does preclusion show respect for

---

[1] "The difficulties that will be encountered with this schizophrenic approach [ruling that state administrative findings may establish preclusion as to the claims under these Civil Rights Acts, at the same time as the same issues are relitigated as to the Title VII claim] are obvious. A way out of these difficulties remains to be found. As to any issues that must be retried, with perhaps inconsistent results, it may prove better simply to retry the issues as to all statutory claims. Application of preclusion as to part of the case saves no effort, does not prevent the risk of inconsistent

state administrative determinations, because litigants apprised of this decision will presumably forgo state administrative determinations for the same reason they currently forgo state judicial review of those determinations—to protect their entitlement to a federal forum. Cf. *Patsy* v. *Florida Board of Regents*, 457 U. S. 496, 532–533 (1982) (POWELL, J., joined by BURGER, C. J., dissenting) (intimating that litigation of unreviewed state administrative determinations in federal court is necessary to encourage exhaustion of state administrative remedies); *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100, 136 (1981) (BRENNAN, J., joined by MARSHALL, STEVENS, and O'CONNOR, JJ., concurring in judgment) (same); *Moore* v. *East Cleveland*, 431 U. S. 494, 524, n. 2 (1977) (BURGER, C. J., dissenting) (same).

In support of its view that preclusion is required, the Court relies on an analogy to its construction of the Wunderlich Act in *United States* v. *Utah Construction & Mining Co.*, 384 U. S. 394 (1966). In my opinion, that analogy is seriously flawed. In *Utah Construction*, the Court held that in a dispute arising under a Government contract, factual findings by the Board of Contract Appeals were binding on the Court of Claims. In support of its dictum that the holding was "harmonious with general principles of collateral estoppel," *id.*, at 421, the Court relied on the fact that Congress had

findings, and may distort the process of finding the issues. The opportunity for repose is substantially weakened by the remaining exposure to liability. Insistence on preclusion in these circumstances has little value, and more risk than it may be worth." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4471, p. 169 (Supp. 1985).

Moreover, in this case, and presumably in many other cases as well, even the § 1983 claim may be litigated in federal court, at least to the extent of determining whether the complainant was afforded a full and fair opportunity to litigate before the state administrative tribunal. See *ante*, at 799, n. 8.

plainly intended the administrative findings in such proceedings to be conclusive.[2]

The relevant federal statute in this case is the 1871 Civil Rights Act, not the Wunderlich Act. Needless to say, there is nothing in the legislative history of the post-Civil War legislation remotely suggesting that Congress intended to give binding effect to unreviewed rulings by state administrators in litigation arising under that statute. Quite the contrary, as we explained in *Monroe* v. *Pape*, 365 U. S. 167, 180 (1961):

"It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts

---

[2] The Court quoted with approval the following excerpt from the dissenting opinion of Judge Davis in the Court of Claims:

"'This is the same general policy which nourishes the doctrine of collateral estoppel. The court is reluctant, however, to apply that principle to these administrative findings because of the nature and genesis of the boards. The Wunderlich Act, as applied in *Bianchi*, should dispel these doubts. The Supreme Court made it plain that Congress intended the boards (and like administrative representatives) to be *the* fact-finders within their contract area of competence, just as the Interstate Commerce Commission, the Federal Trade Commission, and the National Labor Relations Board are *the* fact-finders for other purposes. In the light of *Bianchi*'s evaluation of the statutory policy, we should not squint to give a crabbed reading to the board's authority where it has stayed within its sphere, but should accept it as the primary fact-finding tribunal whose factual determinations (in disputes under the contract) must be received, if valid, in the same way as those of other courts or of the independent administrative agencies. Under the more modern view, the findings of the latter, at least when acting in an adjudicatory capacity, are considered final, even in a suit not directly related to the administrative proceeding, unless there is some good reason for a new judicial inquiry into the same facts. See Davis, *Administrative Law* 566 (1951); *Fairmont Aluminum Co.* v. *Commissioner*, 222 F. 2d 622, 627 (4th Cir., 1955). The only reasons the majority now offers for a judicial re-trial of factual questions already determined by valid board findings are the same policy considerations which Congress and the Supreme Court have already discarded in the Wunderlich Act and the *Bianchi* opinion. *[Utah Construction & Mining Co.* v. *United States,]* 168 Ct. Cl. [522,] 541–542, 339 F. 2d [606,] 618 [1964].'" See 384 U. S., at 421, n. 18.

because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies."

See *Mitchum* v. *Foster*, 407 U. S. 225, 238–239, 242 (1972). Cf. *Briscoe* v. *LaHue*, 460 U. S. 325, 338 (1983). Due respect for the intent of the Congress that enacted the Civil Rights Act of 1871, as revealed in the voluminous legislative history of that Act, should preclude the Court from creating a judge-made rule that bars access to the express legislative remedy enacted by Congress.

Accordingly, I respectfully dissent from Part IV of the Court's opinion.