**Linwood M. DANIELS, Plaintiff,**

v.

**Marion S. BARRY, Jr., et al., Defendants.**

**Civ. A. No. 84–3108.**

United States District Court, District of Columbia.

May 19, 1987.

---

John W. Karr, William G. McLain, Karr, Lyons & Burns, Washington, D.C., for plaintiff.

Maria Merkowitz, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM ORDER

FLANNERY, District Judge.

This matter comes before the court on defendants' Motion to Dismiss the Complaint or in the Alternative For Summary Judgment. For the reasons set forth below, defendants' Motion is denied.

### I. *Background*

This action was brought by plaintiff, an officer of the Metropolitan Police Department of the District of Columbia ("MPD"), based upon the MPD's refusal to promote him to the rank of sergeant. Plaintiff alleges that while on duty as a police officer in 1979, he was injured by gunshot wounds, and a fall to the pavement to avoid additional gunshots. As a result of these injuries, plaintiff's ability to use his upper left extremity (arm, shoulder, and hand) is se-

verely limited. Among other activities which his injury precludes, plaintiff is unable to fire a service revolver.

Plaintiff alleges that he sat for the sergeant's exam in 1980, was ranked 15th on the official promotion roster, but was never promoted because he could not pass the physical examination required by the MPD as a condition of promotion. Since that time, plaintiff has been placed on "limited duty" in the MPD's Court Liaison Division.

Plaintiff alleges that the MPD's failure to promote him based solely upon his physical disability is a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("the Act"), as well as the Fifth Amendment of the Constitution of the United States, and Sec. 1–2501, *et seq.* of the District of Columbia Code.[1] Prior to filing this action, plaintiff pursued a similar claim before the District of Columbia Office of Human Rights ("the Agency"). After a hearing, the Agency ruled against plaintiff, upholding the MPD's position with respect to the promotional requirement of passing a physical exam. The Agency's position was also upheld on administrative appeal.

### II. *Discussion*

Defendants contend in the instant motion that plaintiff's action in this court is barred by the doctrines of res judicata and collateral estoppel, because plaintiff's claim is similar to that pursued before the Agency. Defendants rely primarily on the case of *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), in which the United States Supreme Court held that where a state administrative agency acts in a judicial capacity on a plaintiff's claim, that action will have preclusive effect in certain circumstances in a subsequent claim brought by that plaintiff under 42 U.S.C. § 1983. However, the Court in *Elliot* specifically held that a state administrative agency's findings *cannot* have preclusive effect in an action brought under Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq.* The Court

---

**1.** Plaintiff has indicated that in the interest of simplifying the issues in this case, he is willing to dismiss voluntarily his action under the Dis-trict of Columbia statute, limiting his complaint to federal causes of action. *See* Plaintiff's Pretrial Brief at 1, n. 1.

reasoned that where Congress has intended independent or *de novo* review of a federal civil rights claim in a federal court, the federal court should not be barred from hearing that claim by a prior state administrative adjudication. Such Congressional intent regarding *de novo* review has long been clear in Title VII, but was held to be absent from § 1983 in the case of *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). It is this distinction which is the critical holding of *Elliott*.

Thus, the question before the court on defendants' motion is whether the Rehabilitation Act of 1973 is to be treated like 42 U.S.C. § 1983 or like Title VII when determining the preclusive effect of prior state administrative adjudications. For reasons that are clear in both the language of the Act itself as well as its legislative history, the latter approach is warranted.

To begin with, it is worth noting that the Act is something of a hybrid, incorporating procedures from both Title VI and Title VII of the Civil Rights Act, as well as permitting private causes of action. Section 504(a)(1) of the Act expressly incorporates Title VII's provisions for those persons aggrieved by failure of federal agencies to adopt affirmative action programs for the handicapped. 29 U.S.C. § 794a(a)(1). Thus, with respect to actions under that portion of the Act, Congress' intent is express that those "remedies, procedures, and rights" set forth in Title VII are to be available to those suing under § 501 of the Act. No further analysis is required to conclude that, under *Elliott*, a state adjudicative proceeding would not bar a subsequent action in federal court under section 501 of the Act.

Plaintiff's action is brought not under § 791, but under § 794, which prohibits discrimination against otherwise qualified handicapped individuals by "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. That section

has been held to create a private cause of action in aggrieved persons.[2] *See, e.g., Pushkin v. Regents of University of Colorado*, 658 F.2d 1372 (10th Cir.1981), and cases cited therein; *Fell v. Brooks*, 522 F.Supp. 30 (D.D.C.1981) (recognizing a private cause of action under § 794). Furthermore, section 794a(b)'s provision regarding recovery of attorney's fees by prevailing parties has been applied to private actions brought under § 794, based on a finding of Congressional intent to encourage private actions under that section. *See Fell, supra*, 522 F.Supp. at 33. Thus, it seems appropriate to conclude that the type of review which Congress expressly created under § 791 is available under § 794 as well, since Congress clearly intended private causes of action under both sections as a method of enforcing the provisions of the Act.

In fact, private causes of action under § 794 have been litigated with burdens and presumptions that parallel those in employment discrimination cases brought under Title VII. *See, e.g., New York State Association for Retarded Children v. Carey*, 612 F.2d 644, 647 (2d Cir.1979) (using *McDonnell Douglas* formulation of prima facie case and shift of burden of proof in action brought under § 504 of the Act). Moreover, there is no requirement of exhaustion of administrative remedies prior to bringing an action under § 794. These factors indicate a congressional intent to permit plaintiffs under § 794 to have a *de novo* review of their claims by a federal court.

Finally, it should be noted that the overall purposes of the Act parallel those of the Civil Rights Act, except that the Act has as its focus physical handicaps instead of race. The United States Court of Appeals for the Second Circuit noted in the *New York State Association for Retarded Children, supra*, that "[a]s is apparent from its language, § 504 is intended to be part of the

---

**2.** This private cause of action is *in addition* to the remedies expressly created by § 505(a)(2) of the Act, which permits a Title VI–type action to seek termination of funding of an allegedly discriminatory recipient of federal funding. *Pushkin v. Regents of University of Colorado*, 658

F.2d 1372, 1381–1382 (10th Cir.1981). Thus, defendant's insistence at oral argument that plaintiff's action is governed by Title VI procedures misconstrues the private cause of action that courts have implied, and under which plaintiff seeks relief.

general corpus of discrimination law." 612 F.2d at 647. For all these reasons, it seems that the better course under *Elliott* is to treat an action under § 794 like an action under Title VII when determining the preclusive effect of a prior state administrative adjudication.

Indeed, it would make little sense to adopt the position which defendants take, since the issue presented in plaintiff's action is whether the District of Columbia's policy with respect to handicapped police officers is proper under federal antidiscrimination law. *See New York State Association for Retarded Children,* 612 F.2d at 647 ("Clearly, deferral to a state agency's factfinding is inappropriate once that agency is the defendant in a discrimination suit."). This issue was never addressed by the Agency below, which instead adjudicated plaintiff's claim solely under District of Columbia law. Accordingly, there is no reason to "defer" to findings and conclusions made by a state agency under a wholly different statutory scheme. Accordingly, defendants' Motion to Dismiss or in the Alternative for Summary Judgment, must be denied.

Therefore, upon consideration of defendants' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment, the opposition thereto, oral argument on the motion, and the entire record herein, it is by the court this **17th** day of May, 1987,

ORDERED that defendants' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment is denied; and it is further

ORDERED that the parties shall appear for a pretrial conference in this matter on November 13, 1987, at 4:00 p.m.; and it is further

ORDERED that trial in this matter shall commence on January 11, 1988, at 10:00 a.m.