Robert J. CROWLEY,
Plaintiff–Appellee,

v.

PRINCE GEORGE'S COUNTY, MARY-
LAND, Defendant–Appellant,

and

Prince George's County Police
Department, Defendant.

Robert J. CROWLEY,
Plaintiff–Appellant,

v.

PRINCE GEORGE'S COUNTY, MARY-
LAND, Defendant–Appellee,

and

Prince George's County Police Depart-
ment, Defendant.   (Two Cases)

Nos. 89–2027 to 89–2029.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1989.

Decided Nov. 29, 1989.

Rehearing and Rehearing In Banc
Denied Dec. 28, 1989.

John Trahey Beamer, II, Associate Co. Atty. (Michael P. Whalen, Co. Atty., Michael O. Connaughton, Deputy Co. Atty., Upper Marlboro, Md., Michael G. Comeau, J. Michael Dougherty, Jr., Associate Co. Attys., Upper Marlboro, Md., on brief) for plaintiff-appellant.

Joel Paul Bennett, Washington, D.C., for defendant-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BRITT, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

Here we must determine whether liability can be imposed upon Prince George's County, Maryland, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, for the decision of its police chief to downgrade the salary level of one of his employees. The district court entered judgment against the county under both statutes, basing liability under § 1981 on a theory of respondeat superior. The Supreme Court's recent decision in *Jett v. Dallas Independent School District,* —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), requires that we reject the district court's imposition of respondeat superior liability. We further hold that although the police chief was a personnel decision-maker, he was not a policymaker for purposes of municipal liability. Accordingly, we reverse the district court with respect to the § 1981 claim. We remand the Title VII claim for further findings of fact.

I.

Robert J. Crowley, a white male, began employment with Prince George's County in 1967. His job involved investigating complaints of police brutality, largely from black, low-income residents of Prince George's County against white police officers. In 1974, Crowley's position was placed under the supervision of the Prince George's County Police Department. He alleges that at this time he became the target of a pattern and practice of harassment.

In August 1979, the Acting Commander of the Personnel Division of the Police Department sent a memorandum to the Acting Chief of Police indicating that she had discussed eliminating Crowley's position, but had decided that a desk audit should be requested first. Such an audit, in which the classification of certain positions is reviewed by the Office of Personnel, was conducted, and the results were released in October 1980. The audit results indicated that Mitchell Dorsey, a black male, and Betty Kulle, a white female, were properly designated at the salary grade of G21. The report also indicated that Crowley's duties were similar to those of Dorsey and Kulle and that the correct salary grade for Crowley's position would be G21. At the time, Crowley was designated at the higher salary grade of G27. The Office of Personnel recommended that Crowley retain his current grade, but that the position be downgraded when vacated.

At the time the results of the desk audit were released, Crowley had been removed from his position for being absent without leave for two days. After he appealed the removal, however, the penalty was reduced to a 20–day suspension with backpay. He was reinstated in March 1981 at his previous salary grade of G27.

At about this time, Dorsey, the black male employee, filed a complaint with the Maryland Commission on Human Relations alleging that he was being paid less for the same work than a white employee, namely Crowley. In December 1981, the police chief downgraded Crowley's position, re-

sulting in a reduction in Crowley's pay of $8,000 per year.

Crowley then filed a grievance with the police department. After having his petition denied, he appealed in turn to the Prince George's County Personnel Board, the Circuit Court for Prince George's County, and the Circuit Court en banc. All affirmed. In May 1984, Crowley filed the instant suit bringing Title VII, § 1981, and state law claims against Prince George's County in federal court. He alleged that his position was downgraded in retaliation for conscientiously performing his job and thereby drawing attention to racial harassment by the police department. In the alternative, he alleged that because his position was downgraded in response to the racial discrimination claim of Dorsey, he himself was discriminated against on the basis of race. The jury returned a verdict in Crowley's favor on the § 1981 claim, and the district court adopted the jury's findings and entered judgment for Crowley on the Title VII claim. The county moved for judgment notwithstanding the verdict, arguing primarily that the court erred in ruling that liability could be imposed on a municipality under a theory of respondeat superior under § 1981. The district court denied the motion, and this appeal followed.

## II.

■ In *Jett v. Dallas Independent School District,* — U.S. —, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), decided after the district court's decision here, the Supreme Court held that a municipality cannot be held liable under a theory of respondeat superior for its employees' violations of § 1981. The Court stated that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* 109 S.Ct. at 2722. It therefore "rejected respondeat superior as a basis for holding a state actor liable under § 1983 for violation of the rights enumerated in § 1981." *Id.* at 2723. Thus, the district court clearly erred here

in approving respondeat superior as a basis for § 1981 liability.

■ The *Jett* Court emphasized that in order to hold liable a municipality for its employees' actions, those actions must represent the official policy of the municipality. *Id.* Crowley argues that his case ought to be remanded to the district court so that he might demonstrate that the police chief who downgraded his position possessed final policymaking authority, and thus that his decision represented the official policy of Prince George's County. *Jett* makes clear that such a remand is unnecessary, however; an appellate court is competent to determine as a matter of law whether an official has final policymaking authority. *Id.* at 2724. In this case, we find it beyond dispute that the Prince George's County police chief did not possess final policymaking authority with respect to police department personnel decisions.

The Supreme Court most recently addressed the issue of what constitutes final policymaking authority in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion). *Praprotnik* is particularly apposite here because it too involved a personnel decision made by a municipal employee. The case involved a St. Louis city employee who was transferred from one city department to another by agreement of the directors of the departments, and then was eventually laid off by the director of the second department. The employee brought suit under § 1983 against the department directors and the city alleging that these actions were taken in retaliation for his successful appeal of an earlier suspension, and in violation of his rights under the first amendment. The jury exonerated the individual defendants, but found the city liable. *Id.* 108 S.Ct. at 919–20. The city's liability was the only issue before the Court.

The *Praprotnik* plurality found that none of the individual defendants possessed the final policymaking authority necessary for municipal liability. The plurality emphasized that whether an individual possesses such authority is a matter of state law. *Id.* at 924; *see also Pembaur v.*

*Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Applying state law to the facts before it, the plurality found that final policymaking authority over personnel matters was shared on the one hand by the mayor and aldermen of St. Louis and on the other by the city Civil Service Commission. It pointed to the fact that pursuant to the city charter the mayor and aldermen were authorized to adopt ordinances relating to personnel administration, and the Civil Service Commission was required to prescribe rules for the administration and enforcement of the charter's provision relating to personnel matters. *Id.* 108 S.Ct. at 925.

The *Praprotnik* plurality indicated that even if the department directors were retaliating against the employee because of his earlier appeal, this would not prove any unconstitutional municipal policy. Rather, it would demonstrate only that the department directors were acting in contravention of the city's established policy. The plurality noted that the employee did not contend that anyone in city government ever promulgated a policy of retaliation, and that he did not prove that such retaliation was ever directed at anyone other than himself. Nor did the employee offer any evidence that the Civil Service Commission delegated its final authority to interpret and enforce the city's policy of basing personnel decisions on merit and fitness. *Id.* at 926–27. Thus, the plurality held that even though the department directors were final decisionmakers with respect to certain personnel decisions, they clearly were not policymakers.

Similarly, the Prince George's County police chief is responsible for personnel decisions within the police department, but he does not possess final policymaking authority. Article IX of the Prince George's County Charter unambiguously vests the authority to establish and administer a personnel system in the County Council and the County Executive. The Charter states that "the Council shall provide by law for a personnel system governing the appointment and removal of employees, and other personnel procedures for employees in the County government." Prince George's

County Charter, Art. IX, § 901. In addition, it dictates that all personnel decisions be based on merit and fitness. *Id.* The County Executive, through the Office of Personnel, administers the system. Charter, Art. IX, § 905. Nothing in the Charter bestows on the police chief any type of policymaking authority concerning personnel matters.

Crowley does not contend that Prince George's County has or has ever had a policy of retaliating against its employees for bringing to light instances of racial harassment. Nor does he point to any persons other than himself who have been maltreated for drawing attention to racial harassment. There exists not one hint of evidence either that policymaking authority over personnel matters was delegated to the police chief, or that the county had a custom of harassing persons who publicized racial harassment. To the contrary, the county presumably created positions such as Crowley's specifically for the purpose of ferreting out and exposing racial harassment.

The scenario in this case is indistinguishable from that posed by a plurality of the Supreme Court in *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), as exemplary of a situation in which a municipal employee does not have final policymaking authority. The plurality stated:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissoners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the

Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

*Id.* at 483 n. 12, 106 S.Ct. at 1300 n. 12 (emphasis in original).

Prince George's County plainly cannot be held liable for the personnel decision of its police chief. To rule to the contrary would expose a municipality to potential liability for every personnel decision. Moreover, it would create a perverse incentive for a municipality to relegate personnel decisions to the lowest-level decisionmakers in order to avoid having the decisions labeled official municipal policy. We refuse to place Prince George's County in so untenable a position. Further, we think it inappropriate to tarnish a municipality with the errant decision of a single employee in an individual case. It is the municipality's policies, not "the subordinate's departure from them," that must underlie liability in such instances. *Praprotnik,* 108 S.Ct. at 926.

We therefore reverse the decision of the district court with respect to the § 1981 claim.

### III.

We next address Crowley's claims under Title VII, 42 U.S.C. §§ 2000e, *et seq.* Although the chief of police here is not a final policymaker for purposes of § 1981, he nonetheless is an employer for purposes of Title VII. *See Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir.1986).

■ Crowley alleges that his position was downgraded in retaliation for his involvement in the investigation of racial harassment claims against the police department. He contends that this states a claim for discriminatory retaliation in violation of 42 U.S.C. § 2000e–3. We disagree. Section 2000e–3 forbids discrimination against an employee "because he has opposed any practice *made an unlawful employment practice* by this subchapter, or because he has ... participated in any manner in an investigation, proceeding, or hearing under this subchapter." (emphasis

added). Crowley complains, however, not that he has been retaliated against for investigating discriminatory *employment* practices within the police department, but for investigating instances of racial harassment perpetrated by police officers against members of the community. Such a claim simply is not cognizable under Title VII.

It may be that the downgrading of Crowley's position by the chief of police was wrongful or even spiteful. We have emphasized, however, that Title VII "is not a general 'bad acts' statute." *Holder v. City of Raleigh,* 867 F.2d 823, 828 (4th Cir.1989). Rather, the conduct it prohibits is specifically set forth. To recognize Crowley's claim would be to authorize retaliation actions under Title VII for anyone whose job entails the investigation of any claim of discrimination against his or her employer, without regard to whether the claimed discrimination relates to a practice of employment. While Congress may decide to extend the statute's coverage to persons who bring any discriminatory practice of an employer to light, such a step lies beyond the province of the courts. To find in Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.

■ Crowley also alleges that he has been discriminated against on account of his race. He contends that the downgrading of his position was racially motivated in that it was ordered to avoid a charge of racial discrimination by a black employee. Thus, he argues, his position never would have been downgraded had he not been white. This claim of a racially motivated adverse employment action states a cognizable cause of action under Title VII. *See* 42 U.S.C. § 2000e–2.

The district court's opinion leaves us uncertain on what precise basis it entered judgment for plaintiff. In its opinion, the district court stated:

There was substantial evidence to support the jury's verdict that plaintiff was discriminated against by the police department because of activities in which

he had been engaged as a member of the County's Human Relations Committee. Further, the evidence fully established that the alleged civil rights violations which plaintiff investigated in that capacity were race-related and perceived to be race-related by the members of the police department. This Court fully and without hesitation adopts the findings which the jury made in connection with plaintiff's claim under 42 U.S.C. Section 1981 as its own findings in connection with plaintiff's Title VII claim.

It would appear from this language that the district court based its decision on Crowley's charge of retaliation, which, as we have noted, fails to state a cause of action under Title VII. It is unclear what ruling, if any, the district court made with respect to Crowley's charge of discrimination. More complete findings are essential if we are to assess the correctness of the district court's judgment. We therefore remand Crowley's claim of discrimination under Title VII to the district court for further clarification of this point.

■ We note finally that the county's assertion that the Title VII claim is barred by issue preclusion due to the earlier state administrative proceedings is without merit. "[W]hen a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986) (*quoting United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). We believe that because "substantial differences" exist between Title VII and the Prince George's County Code governing the personnel system, Maryland courts would not accord preclusive effect to the findings of the personnel board. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 361–62 (4th Cir. 1985).

### IV.

In sum, we reverse the district court with respect to Crowley's § 1981 claim and remand with directions to enter judgment thereon for Prince George's County. We remand Crowley's Title VII claim to the district court for further findings of fact and amplification in accordance with this opinion.

REVERSED IN PART, AND REMANDED.