Sabat QUIÑONES
CANDELARIO, Plaintiff,

v.

POSTMASTER GENERAL OF the
UNITED STATES, Defendant.

Civ. No. 88-0172 (JP).

United States District Court,
D. Puerto Rico.

May 31, 1989.

Julio Jiménez González, Río Piedras, P.R. and Richard J. Burton, Miami, Fla., for plaintiff.

Fidel Sevillano del Río, Asst. U.S. Atty., Hato Rey, P.R. and Andrew L. Freeman, U.S. Postal Service, Office of Legal Services, Windsor, Conn., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Sabat Quiñones Candelario initiated this action to enforce a decision by the Equal Employment Opportunity Commission (EEOC) under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* The EEOC found that the United States Postal Service had illegally discriminated against Quiñones on the basis of physical handicap, and it ordered reinstatement with back pay. Quiñones was reinstated but has never been awarded back pay. On February 6, 1989, the plaintiff filed a motion for summary judgment which was timely opposed on March 4, 1989. Because the opposition came just one week before trial was scheduled to begin, the Court's ruling on the summary judgment motion was made without findings of fact and conclusions of law on March 17, 1989. The Court now issues this Opinion and Order in support of summary judgment for the plaintiff.

### I. *Facts*

On August 8, 1979, the plaintiff was hired as a postal clerk. As a new employee of the Postal Service, Quiñones was required satisfactorily to complete a 90-day probationary period which included a fitness-for-duty examination by a Postal Service medical officer. The medical officer, Dr. Echevarría, examined Quiñones on September 6, 1979, and determined that he was medically unsuitable for the position of part-time flexible clerk. As a result, the Postal Service terminated Quiñones' employment, effective September 6, 1979.

On that day, Quiñones sought informal Equal Employment Opportunity (EEO) counseling with a postal EEO counselor. He considered the Postal Service to have

discriminated against him because of his handicap. Quiñones did not succeed in resolving his claims informally, and he filed a formal EEO complaint on June 10, 1979. In accordance with administrative procedures, 29 CFR § 1613.210, *et seq.*, the complaint was processed through the hearing stage, at which the EEOC attorney examiner found that the Postal Service had discriminated against the plaintiff based upon his handicap.

In its final agency decision, however, the Postal Service rejected the attorney examiner's conclusions and found that Quiñones' termination was not discriminatory. Quiñones appealed that determination to the Office of Review and Appeals of the EEOC (ORA) which held that his termination was improperly based on his physical condition. On April 8, 1985, the ORA ordered the plaintiff to be reinstated with back pay.

On June 7, 1985, the Regional Director of Employee and Labor Relations for the Postal Service's Northeast Region informed the plaintiff in writing that the Postal Service would reinstate him, pursuant to the decision of the EEOC, contingent on his present medical suitability and would process his back-pay claim in accordance with postal regulations set forth in the Employee and Labor Relations Manual (ELM). Plaintiff was reinstated on June 22, 1985. In accordance with these instructions, Mario V. Garcia, then Director for Employee/Labor Relations for the Caribbean District of the Postal Service, informed Quiñones by letter dated September 17, 1985, that before a back-pay determination could be made, Quiñones was required to submit proof of his interim earnings and of his attempts to obtain employment.

In response to this instruction, Quiñones submitted an affidavit dated September 24, 1985, in which he states that his interim earnings consisted solely of 100 hours of part-time work as a student with the Veterans Administration. The parties agree that Quiñones had no actual earnings during the pendency of his case, except for part-time and odd jobs for minimal pay. On December 30, 1985, C. Lliteras, the District Man-ager/Postmaster for the Caribbean District, wrote a letter stating that additional information was required to process the back-pay claim. The letter also asked for the dates that Quiñones was employed by the Veterans Administration, the dates that he attended the Inter American University as a student, and the usual hours that he attended classes.

On February 4, 1986, Quiñones submitted a list of nine places at which he had sought work before reinstatement, but the list did not indicate the dates on which he had applied for jobs. Quiñones also stated that from January, 1980, to December, 1982, he studied at the Inter American University and took 12 credits each semester. By letter of March 5, 1986, the Postal Service denied back pay. It concluded that the evidence presented by the plaintiff failed to demonstrate that he had made reasonable efforts to obtain other employment.

In March, 1986, Quiñones filed three separate grievances under the grievance/arbitration procedure of the collective bargaining agreement between the American Postal Workers Union (APWU) and the Postal Service challenging the Postal Service's denial of his back pay claim. On May 13, 1986, Earl L. Benson, an ORA Compliance Officer, informed the General Manager of the Labor Relations Division of the Postal Service's Northeast Region that he believed that the Postal Service had sufficient information available to determine the amount of back pay due to Quiñones.

By letter of May 22, 1986, the Postal Service reaffirmed its previous denial of Quiñones' claim for back pay. It explained that Quiñones failed to demonstrate in his February 4, 1986, submission that he had made reasonable attempts to obtain alternative employment and had failed to submit an adequate resumé of his efforts to secure other employment. On August 18, 1986, Quiñones submitted additional documents to the Postal Service and to the EEOC in an effort to demonstrate that he had made a reasonable effort to obtain employment during the period between his termination and his reinstatement to the

Postal Service. On September 26, 1986, the Postal Service denied each of Quiñones' grievances at step three, the step before arbitration.

On January 30, 1987, the Postal Service informed the EEOC that it had found that the additional documentation submitted by Quiñones failed to meet the standards of the ELM requiring the plaintiff to furnish the Postal Service with a resumé of his efforts to secure other employment during the back-pay period. It pointed out that the documents submitted were suspect. In March, 1987, the plaintiff's grievances were scheduled for arbitration; however, the plaintiff postponed this arbitration in lieu of his intent to initiate a civil action in this Court for enforcement.

The Court held two Initial Scheduling Conferences, on July 18, 1988, and November 3, 1988, to reach stipulations of fact and to prepare a schedule for discovery. The plaintiff filed the present motion for summary judgment on February 6, 1989, and after receiving an extension of time, the defendant timely opposed on March 14, 1989.

The plaintiff argues that the failure-to-mitigate defense is available to the Postal Service only in actions on the merits, and the defendant is precluded from raising it in the present enforcement action under 42 U.S.C. § 2000e-5. The postal service argues that the EEOC never made a determination that Quiñones had or had not made sufficient attempts at mitigation. There was thus no ruling on the issue of mitigation, and the Postal Service was justified in requiring mitigation before paying the award.

## II.  Summary Judgment

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. Rule Civ.Pro. 56(c). The Court views all facts in the light most favorable to the party opposing the motion (the Postal Service) and indulges in all inferences favorable to that party. Ismert and Associates v. New England Mut. Life Ins., 801 F.2d 536, 537 (1st Cir.1986), citing Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The defendant can defeat a motion for summary judgment by demonstrating the existence of a genuine issue of material fact pertaining to those issues upon which it would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir.1988).

In this case, there are numerous controverted facts, but they are all immaterial to the dispositive issue in the case. That is, even if the Court considers all the defendant's allegations to be true,[1] the plaintiff must still prevail as a matter of law because the defendant is collaterally estopped from raising the mitigation-type defense in this action for enforcement.

## III.  Collateral Estoppel

■ In cases of employment discrimination, the proper remedy normally includes back pay. See Albemarle Paper Company v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). Title VII obligates the plaintiff, however, to make reasonably diligent efforts to seek a substantially equivalent position. 42 U.S.C. § 2000e-5(g). Any failure by the plaintiff to meet this obligation should result in a reduction in the back pay award.

---

1. The plaintiff did not make any attempt to seek employment between the date of his termination and the date he enrolled as a full-time student at Inter American University; he quit the only job he obtained, a part-time position with the Veterans Administration; he did not apply for work at many of the places he claims to have contacted; he submitted fraudulent documents and affidavits to the Postal Service in an effort to show a reasonable attempt at finding other employment; there were clerical jobs with similar working conditions, status, and promotional opportunities available to the plaintiff; there were administrative jobs available to the plaintiff after he obtained his bachelor's degree; and the EEOC has not determined that the plaintiff satisfied his duty to mitigate his damages, nor has it issued an order to the Postal Service to pay Quinones a specific amount of back pay.

The procedure for determining the amount of back pay is indicated in *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir.1986):

> Once damages have been established, it is the employer's burden "to prove, as an affirmative defense, that the employee failed to mitigate those damages." *Hanna v. American Motors Corp.*, 724 F.2d 1300, 1307 (7th Cir.1984). To prevail, the employer must prove both that the employee was not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance the employee might have found comparable employment. *Id.*, (citing *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 159 (7th Cir.1981)).

When the present case was before the EEOC, there was no inquiry into the reasonable-diligence issue, and there was no calculation of the back pay owed to Quiñones. The Postal Service argues that issue therefore cannot be foreclosed. The plaintiff argues that the principle of administrative res judicata bars further inquiry into the matter, regardless of the nature of the inquiry before the EEOC.

The principles of collateral estoppel have long been applicable when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In this situation, the traditional preclusion doctrine applies: "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) *citing Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877).

In this case, there is no doubt that the EEOC serves in a judicial capacity, resolving issues of fact and providing the parties opportunity to litigate all the issues. *See* 29 CFR Part 1613 (July 1, 1988). The EEOC decision was plainly a judgment on the merits, and it constitutes a final judgment with which the Postal Service is obligated to comply. 29 CFR § 1613.237 (July 1, 1988). The Postal Service is therefore precluded from raising the reasonable-diligence issue if it could have raised it in the administrative proceeding.

Under 29 CFR § 1613.271 and Appendix A (July 1, 1988), when the EEOC makes a finding of discrimination, the order of relief should include back pay,[2] computed according to 5 CFR § 550.805. Both Appendix A and the OPM regulations (5 CFR) require deductions for amounts actually earned by the victim of discrimination.[3] The exact construction of the back-pay award is therefore a proper subject of the EEOC proceedings.

The defendant argues that the EEOC sometimes does make precise calculations of back pay and that collateral estoppel should apply only in those instances. The reasonable-diligence issue is in the nature of an affirmative defense, however, *see*

---

**2.** "Each identified victim of discrimination is entitled to be made whole for any loss of earnings the discriminatee may have suffered by reason of the discrimination. Each individual discriminatee must receive a sum of money equal to what would have been earned by the discriminatee in the employment lost through discrimination ('Gross Backpay' *less what was actually earned from other employment* during the period after normal expenses incurred in seeking and holding the interim employment have been deducted ('Net Interim Earnings')."

29 CFR Part 1613, Appendix A (July 1, 1988) (emphasis added).

**3.** The fact that these regulations do not provide for reasonable-diligence deductions, but only for actual-earnings deductions, does not alter the fact that back pay is properly awarded by the EEOC and is an issue that should be raised in that forum. The apparent difference in the standards might give the defendant motivation for reserving the reasonable-diligence question, but it does not provide the opportunity to raise the question in a subsequent enforcement proceeding.

*Wheeler,* 794 F.2d at 1234 (above), and the defendant is obligated to raise it in the primary proceeding if it wishes to rely on it later.

The doctrine of administrative res judicata is not applicable where legislative policy favors an independent determination of the issue in another tribunal. *Rosenfeld v. Department of Army,* 769 F.2d 237, 240 (4th Cir.1985), *citing* Restatement (Second) of Judgments § 83(4)b (1982). In this case, however, the Court can discern no legislative policy that would favor separate, collateral review of the reasonable-diligence issue. Section 2000e–5(g) arguably embodies a more rigorous mitigation standard than do the OPM and EEOC regulations, and the Postal Service appears to have an interest in applying the more stringent standards of the statute and its own Employee and Labor Relations Manual. The Postal Service does not, however, offer any reason why it should be allowed to sit idly by in the EEO process, receive an unfavorable (*i.e.,* unmitigated) decision on back pay, and then hold the purse strings on an outmanned employee while it awaits a civil action for enforcement.

The EEOC order, issued after an adjudicative process with full opportunity for the Postal Service to ask for deductions in the back-pay award, therefore constitutes a final decision on the merits with respect to back pay. The interests of fairness, judicial economy, and enforcement of repose prohibit the defendant from collaterally attacking the EEOC award in the present proceeding. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328–30, 91 S.Ct. 1434, 1442–44, 28 L.Ed.2d 788 (1971). For this reason, the plaintiff's motion for Summary Judgment is GRANTED, and the only remaining task for this Court is to calculate the award.

## IV. *Back Pay*

On March 20, 1989, the parties appeared for a hearing and made the following representations regarding the Postal Service's obligations toward the plaintiff:

1. The plaintiff was owed 728 hours in sick leave.

2. The plaintiff was owed 774 hours in annual leave. Because Postal Service regulations limit annual-leave accrual to 240 hours, the remaining 534 hours would be either compensated in cash at the base-pay rate or they would be accredited to the annual-leave account anyway.

3. There is no dispute as to seniority.

4. The principal amount of back pay due is $138,760.68.

5. The interest due was between $100,000 and $130,000, but had not been agreed upon by the parties. The parties agreed that the method of calculation was to compound the interest annually, computed from the pay period due, at the federal judgment rate.

The plaintiff subsequently submitted calculations totaling $118,078.39 in interest through March 20, 1989. The defendant submitted a correction stated that the plaintiff had used an inflated principal amount ($140,084.90) and had used a calendar-year basis for compounding interest. The defendant considered these mistakes to amount to $12,804.34, leaving $105,275.45.

The plaintiff has not opposed this figure, and the Court adopts it and shall enter judgment on this amount. The interest subsequent to March 20, 1989, shall be paid at $68.37 per day.

Annual and sick leave shall be effective immediately and applicable retroactively to March 20, 1989. Judgment shall be entered accordingly.

IT IS SO ORDERED.