# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3331

_____

| | | |
|---|---|---|
| Robert Shain; James Sheetz, | * | |
| | * | |
| Plaintiffs/Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Ann M. Veneman, Secretary of | * | Appeal from the United States |
| Department of Agriculture; Gilbert | * | District Court for the Southern |
| Gonzalez, Jr., Undersecretary of | * | District of Iowa. |
| Agriculture for Policy and Planning; | * | |
| David Dowdy, Rural Development | * | |
| Specialist, | * | |
| | * | |
| Defendants/Appellees. | * | |
| | * | |
| _____ | * | |
| | * | |
| City of Kinross, Iowa; Regional | * | |
| Utility Service Systems, | * | |
| | * | |
| Amici on Behalf of | * | |
| Appellees. | * | |

_____

Submitted: April 12, 2004
Filed: July 22, 2004

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Robert Shain and James Sheetz brought this action for declaratory and injunctive relief under the Administrative Procedure Act (APA), alleging the United States Department of Agriculture (USDA) would violate federal law by financing the building of a sewage-treatment plant on a flood plain near the property Mr. Shain owns and land Mr. Sheetz rents and farms outside the city of Kinross, Iowa. The district court[1] granted the government's[2] motion to dismiss for lack of standing and dismissed the government's alternative motion for summary judgment as being moot.

On appeal, the plaintiffs argue the treatment plant increases the risk of flooding on their lands and they therefore possess standing to sue because they face an imminent injury traceable to the government's conduct and redressable by a mandatory injunction to dismantle the plant. We agree with the district court the plaintiffs failed to allege a cognizable injury, and we therefore affirm on that basis without reaching other justiciability issues.

I

In 1997, the City of Kinross had no sanitary sewage treatment system, and sewage water from private septic systems flowed into a common drain that emptied into Smith Creek. After a receiving a complaint from the state of Iowa about the

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[2]Plaintiffs sued Ann M. Veneman, the Secretary of Agriculture, and others in their capacity as officials in the USDA. For the sake of simplicity, we refer to the defendants collectively as "the government."

discharge from one resident's septic tank, Kinross studied the possibility of building a community sewer system.

In 2000, Kinross and the Regional Utility Service System (RUSS), an intergovernmental agency, entered into an agreement pursuant to Iowa law whereby RUSS agreed to finance, construct, and jointly maintain a $585,000 sewer system serving forty-two users in rural Kinross. To this end, RUSS secured in principle a $128,500 loan and a $367,500 grant from the USDA.[3]

On June 19, 2002, Kinross condemned 4.74 acres of land to build two retention ponds, or lagoons, for the treatment facility. The local compensation commission awarded $21,500 in damages to the landowners and $100 to Mr. Sheetz as a tenant. When Mr. Sheetz later unsuccessfully appealed the award in state court, he did not challenge the taking on environmental grounds.

The lagoons were finished and became fully operational in March 2003. They are located on a 100-year flood plain for an unnamed tributary of Smith Creek. The tributary runs through land Mr. Sheetz rents and farms adjacent to the lagoons, and Mr. Shain owns farmland 1,000 feet to one-half mile[4] down stream.

On December 24, 2002, Mr. Shain filed a complaint in federal district court challenging the USDA's funding of the project. Following the government's motion

---

[3]The USDA has yet to disburse the grant. When the plaintiffs filed this lawsuit, the USDA decided to withhold release of the money pending the outcome of the litigation. Kinross and RUSS have filed an amicus brief in which they explain they completed the project by securing other loans. As a result, the lawsuit has forced Kinross to pass on the costs of interest payments to customers, whose monthly service bills have risen from roughly $24 to $51.

[4]The parties dispute the exact distance separating the lagoons from Mr. Shain's property. The distance is not controlling.

to dismiss for lack of standing, Mr. Shain amended the complaint to include Mr. Sheetz as a plaintiff.  On May 27, 2003, the government filed an amended motion to dismiss and for summary judgment, once again contesting the standing to sue.

In their complaint, the plaintiffs alleged the USDA would violate federal law by funding the project without requiring Kinross to participate in the National Flood Insurance Plan, as required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4106(a), and without considering alternatives to avoid adverse effects and incompatible development in a designated flood plain, as required by Executive Order 11988.  The district court dismissed the complaint, concluding the plaintiffs lacked standing because they had alleged a speculative or conjectural injury, or alternatively, because the alleged injury was not redressable by judicial relief.  Without reaching other issues (redressability, ripeness), we affirm for the plaintiffs' failure to plead a cognizable injury.

II

The court reviews *de novo* a district court's dismissal for lack of standing, accepting as true all of the complaint's material allegations and construing the complaint in favor of the complaining party.  Gardner v. First American Title Ins. Co., 294 F.3d 991, 993 (8th Cir. 2002).

The standing doctrine serves to limit federal jurisdiction to cases and controversies as required by Article III of the United States Constitution.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61 (1992).  A party invoking federal jurisdiction has the burden of establishing standing, Schanou v. Lancaster County Sch. Dist., 62 F.3d 1040, 1045 (8th Cir. 1995), by alleging and eventually proving he

has suffered an injury-in-fact traceable to the defendant's challenged action and redressable by the court's favorable decision.[5] Lujan, 504 U.S. at 560-561.

The district court correctly concluded the complaint in this case failed to allege a cognizable injury-in-fact. For purposes of standing, a plaintiff's injury must consist of an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Id. The district court held the plaintiffs failed to allege even an imminent injury because the occurrence of a 100-year flood is by definition speculative and unpredictable. As a matter of law, we agree.

In the district court, the plaintiffs alleged they faced two imminent injuries in the event of a 100-year flood. First, effluent from the lagoons will spill onto and contaminate the land when a flood exceeds the height of the lagoons' embankments. Second, the embankments will displace flood waters and increase the risk of flooding on their property. Probably because the government presented undisputed evidence a flood could not reach even the base of the embankments, the plaintiffs have apparently abandoned the contamination argument on appeal.

Instead, the plaintiffs advance the displacement argument alone, essentially contending the word "imminent" does not mean immediate but only certain. They reason the 100-year designation means a flood will certainly occur, albeit potentially many years from now. When such a flood occurs, the embankments will surely displace water, leading to an increased risk of flooding on the plaintiffs' lands. We detect several problems with this argument as a basis for conferring standing.

---

[5]A plaintiff may also be denied standing, even if he meets the Article III standing requirements, if he runs afoul of certain judicially-constructed prudential limits on standing. These are not at issue here because the plaintiffs fail to meet even the irreducible constitutional requirements.

First, the plaintiffs must establish *they* will suffer the imminent injury. If the possibility of a 100-year flood is remote in the abstract, the possibility the flood will occur while they own or occupy the land becomes a matter of sheer speculation. Indeed, one wonders whether any of the parties (or the court) in this case will be alive the next time a 100-year flood occurs upon the land. Second, the allegations in the complaint strike us as vague and conclusory; they only generally underscore the obvious fact the embankments will displace a certain volume of water. Left to conjecture are the questions whether the marginal rise in the water level will move in the direction of the plaintiffs' land, reach the property, and cause cognizable harm which would not have occurred absent the lagoons. Finally, the 100-year label, as a term of art, designates lands most immune from flood damage. If the plaintiffs have alleged a cognizable injury, then as practical matter, any plaintiff who conceivably could be harmed by a defendant's conduct would possess standing to sue in federal court. For these reasons, we conclude the plaintiffs have failed to allege a cognizable injury, and we hold they lack standing to sue the government in this case.

The plaintiffs cite several circuit cases for the proposition that a heightened risk of future harm is a cognizable injury. A close reading of these cases, however, reveals the circuits have recognized only an increase in risk sufficient to take the probability of harm out of the realm of the hypothetical and speculative. To illustrate, we will examine the two cases that most strongly support the plaintiffs' argument.

In <u>Village of Elk Grove Village v. Evans</u>, 997 F.2d 328 (7th Cir. 1993), the plaintiffs were concerned the erection of a radio tower on a flood plain would limit the creek's drainage area and increase the risk of flooding. The court held the plaintiffs possessed standing to sue, declaring in dicta "even a small probability of injury is sufficient to create a case or controversy, to take a suit out of the category of the hypothetical. . . ." <u>Id.</u> at 329.

-6-

In our mind, <u>Elk Grove</u> is easily distinguishable from this case. There, the flood plain was a *common* flood area, which continually imposed sandbagging and other flood-control costs on the Village of Elk Grove. Thus, the Village had a direct stake in ensuring the defendant's conduct did not aggravate a known and predictable danger, even if the marginal increase in risk defied calculation. Here, in contrast, the danger of the flood itself is remote and improbable. To whatever extent the lagoons increase the theoretical risk of flooding on the plaintiffs' property, they will do so only if the remote risk of a 100-year flood first materializes while the plaintiffs have a property interest in the land.

In <u>Mountain States Legal Found. v. Glickman</u>, 92 F.3d 1228 (D.C. Cir. 1996), the court conferred standing on the plaintiffs who challenged the Forest Service's plan to prohibit logging on a national forest. The plaintiffs established the plan would increase the likelihood of a catastrophic fire by permitting fuel to accumulate in dead trees. <u>Id.</u> at 1234-35. The analogy between <u>Glickman</u> and the instant case, of course, is flawed. There, the defendant's conduct directly and measurably increased the chances a fire would start; the defendant's conduct was not merely an intervening factor that could aggravate an independently occurring natural disaster. For this case to become truly analogous to <u>Glickman</u>, the lagoons would have to increase the probability of a 100-year flood itself.

We conclude the jurisprudence of our sister circuits is consistent with our holding in this case.

### III

For the foregoing reasons, we affirm the district court's dismissal of the plaintiffs' complaint for lack of standing.

_____