**Vincent R. DeSIMONE, Plaintiff,**

v.

**BOARD OF EDUCATION, SOUTH HUNTINGTON UNION FREE SCHOOL DISTRICT, and Marie Connelly, Defendants.**

No. CV 83–5296.

United States District Court,
E.D. New York.

March 22, 1985.

Block & Hamburger by Frederick Block, Smithtown, N.Y., for plaintiff.

Jaspan, Ginsberg, Ehrlich, Reich & Levine by Lawrence Reich, Garden City, N.Y., for defendant Bd. of Educ.

Paul Derkash, Plainview, N.Y., for defendant Connelly.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action under 42 U.S.C. § 1983.

## I. FACTS

On May 11, 1983 defendant Board of Education abolished plaintiff's position of High School Dean, effective June 30, 1983. At the same time, the Board established a new position of High School Administrative Assistant. On May 12, 1983 the Superintendent of Schools for the district informed plaintiff of the abolition of his position, and also informed plaintiff that he would not be offered new employment for the term starting September 1983.

It is undisputed that plaintiff held tenure pursuant to N.Y. Education Law § 3012(2). Defendant contends that the discharge was proper pursuant to Education Law § 2510(2) and (3), which provides that whenever a board of education abolishes a position the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued, and that such teacher shall be placed upon a preferred eligible list of candidates for appointment to vacancies in a similar position. Plaintiff contends that the new position of High School Administrative Assistant is essentially equivalent to plaintiff's old position of High School Dean. Under Education Law § 2510(1) if the board of education abolishes one position and creates a similar position, the person holding the old position must be appointed to the new position. Plaintiff contends that defendant has deprived plaintiff of property without due process, in violation of the Due Process Clause of the Fourteenth Amendment.

Defendant has moved to dismiss pursuant to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), on the ground that the state provides adequate post-deprivation remedies for the alleged deprivation of property. Plaintiff has moved for partial summary judgment, requesting this Court to find that plaintiff has been deprived of property without due process.

## II. THE PARRATT ISSUE

The first issue is whether this case should be dismissed pursuant to *Parratt.*

In *Parratt,* the Court held that the loss of a prisoner's property caused by the negligent failure of prison officials to follow normal procedures for the receipt of mail packages, although constituting a deprivation of property under color of state law, did not constitute a deprivation "without due process", given the fact that (1) the loss resulted from a random unauthorized act, so that the state could not provide any pre-deprivation process, and (2) the state did provide adequate post-deprivation remedies. In *Hudson v. Palmer*, — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court applied the same reasoning to intentional deprivations of property resulting from random unauthorized acts by prison guards. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court explained that the *Parratt* doctrine applies only in situations where the state could not practically have provided pre-deprivation process, as for example when the alleged deprivation results from random unauthorized acts by low level personnel.

■ In the instant case, state law under Education Law § 2510 clearly gave plaintiff a substantive property right that in the event his position was abolished and replaced by an essentially equivalent position he would be allowed to occupy such new equivalent position. Plaintiff alleges that the new position created by defendant was essentially equivalent to plaintiff's old position.

■ If and insofar as plaintiff's contention that the positions are equivalent turns upon questions of fact, the procedural component of the Due Process Clause of the Fourteenth Amendment requires that defendant provide plaintiff with notice and a hearing before finally determining that the positions are not equivalent. Assuming for the sake of argument that the equivalency of the positions turns at least in part upon questions of fact and that such a hearing is therefore required, we hold that such hearing, or at least a preliminary hearing, should have been provided *before* plaintiff was discharged. Here, unlike in *Parratt* and *Hudson,* we deal not with random unauthorized acts by low level personnel which higher authorities could not have prevented by means of pre-deprivation process, but rather with an act by a Board of Education. If any hearing was required, we see no reason why the board could not have provided plaintiff with (at the very least) some kind of preliminary hearing *before* the discharge took place. We do not necessarily mean to imply that a full-scale trial type hearing was required prior to the discharge; perhaps it would have been sufficient to hold an abbreviated non-evidentiary hearing prior to the discharge, to be followed by a more elaborate evidentiary hearing after the discharge. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

■ Of course, the equivalency of the positions does not necessarily turn upon issues of fact which could reasonably be disputed. It may well be that the positions were so clearly similar or so clearly dissimilar that at the time of the Board's action it could be said as a matter of law that the discharge was or was not proper under Education Law § 2510. If, at the time of the discharge, undisputed facts could establish as a matter of law that the positions were not "similar" within the meaning of the substantive law of Education Law § 2510(1), then a hearing would have served no purpose, and the Board did not violate the Due Process Clause by discharging plaintiff. On the other hand, if at the time of the discharge undisputed facts

could establish as a matter of law that the positions *were* "similar" within the meaning of the substantive law of Education Law § 2510(1), then the Board's action in discharging plaintiff was substantively (as distinct from procedurally) defective. If the Board's action was substantively defective, then no amount of hearings on factual issues could have remedied the defect (it should be noted, however, that if state authorities determined through formal proceedings that the positions were dissimilar as a matter of substantive law, such a determination might conceivably bar the instant action, not because such a determination would remedy a substantive defect in the Board's action, but rather because such determination could conceivably have res judicata effect and so preclude the possibility of this Court finding the existence of a substantive defect in the first place). Since such substantive defect would have resulted from the action of the Board of Education rather than the random unauthorized action of low level personnel, the existence of post-deprivation state law remedies would not bar the instant action under *Parratt.*

· For the above reasons we hold that this action should not be dismissed pursuant to *Parratt.*

Defendant has cited a number of cases in an attempt to support its contention that *Parratt* is applicable here. We believe that none of these cases are on point, as in every case cited either the alleged deprivation arose from random unauthorized acts, or for some other reason it was impractical to supply any pre-deprivation process. In *Engblom v. Carey,* 677 F.2d 957 (2d Cir. 1982), striking prison guards were evicted from staff housing buildings to make room for National Guardsmen who were to staff the prison. That case involved an emergency situation in which the state could not have supplied pre-eviction process. In *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 328, · 83 L.Ed.2d 265, a tenured high school principal contended that he had been coerced to resign by superiors who informed him that

his position would be abolished unless he resigned. In that case, unlike the instant case, plaintiff's loss of his job did not result from a formal official action by a Board of Education, but rather was alleged to have resulted from the informal unofficial and unauthorized threats by individual superiors of the plaintiff. Consequently, no hearing could have been provided prior to the alleged coercion. Had the Board of Education *itself* coerced the plaintiff in that case to resign, we believe that the Court would not have applied *Parratt.* If a Board of Education coerces a tenured teacher to resign on the basis of a belief that the teacher has engaged in misconduct or other beliefs concerning legally relevant issues of fact open to question, and there is no emergency situation justifying the immediate pre-hearing removal of the teacher, the Board's failure to supply a pre-termination hearing would appear to violate the requirements of procedural due process. If a Board of Education coerces a tenured teacher to resign on the basis of beliefs which, even if factually correct, as a matter of law do not justify the teacher's termination, then the Board's action would appear to violate the substantive component of the Due Process Clause of the Fourteenth Amendment.

■ Defendant has argued that state law does not require a hearing prior to a discharge pursuant to Education Law § 2510. Even assuming that this is true, it does not follow that the instant discharge without a hearing was constitutional. Where, as here, state law has created a substantive property interest, the Due Process Clause of the Fourteenth Amendment sets certain requirements regarding the minimum amount of process that must be employed in making factual determinations relevant to the destruction of such interest, requirements not necessarily derived from the law creating the underlying substantive interest. *Vitek v. Jones,* 445 U.S. 480, 490–491, 100 S.Ct. 1254, 1262–1263, 63 L.Ed.2d 552 (1980) (rejecting suggestions to the contrary contained in the plurality opinion in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)); *see also*

*Santosky v. Kramer,* 455 U.S. 745, 775 n. 3, 102 S.Ct. 1388, 1406 n. 3, 71 L.Ed.2d 599 (Rehnquist, J., dissenting) (1982). Further, the notion that state law never requires a hearing before a discharge under Education Law § 2510 is open to question. In *Mitchell v. Board of Education of Great Neck Public Schools,* 40 N.Y.2d 904, 389 N.Y.S.2d 354, 355, 357 N.E.2d 1008, 1009 (1976), it was held that no hearing is required when a teacher's position is abolished. That case is not on point. Here, there may be a factual dispute over whether plaintiff's position was in fact "abolished". For the same reason, *Beers v. Nyquist,* 72 Misc.2d 210, 338 N.Y.S.2d 745 (Sup.Ct.1972) is not on point.

## III. ISSUES LEFT UNRESOLVED

From the papers submitted to the Court so far, it is impossible for the Court to determine whether (1) resolution of plaintiff's allegation that his old position and the newly created position were essentially equivalent turns upon disputed issues of fact; or (2) it can be said as a matter of law that the positions were similar; or (3) it can be said as a matter of law that the positions were dissimilar. We will allow the parties to submit further papers on these issues.

■ Plaintiff can prove that he has been deprived of property without due process if he demonstrates either (1) that at the time of the plaintiff's discharge there existed genuine factual issues bearing upon the similarity or dissimilarity of the positions; or (2) that at the time of plaintiff's discharge it could be said as a matter of law that the positions were similar within the meaning of Education Law § 2510(1). Defendant can prove that there was no deprivation of property without due process if it can show that at the time of the discharge it could be said as a matter of law that the positions were not similar within the meaning of Education Law § 2510(1).

If it is shown that plaintiff was not deprived of property without due process, then the case will be dismissed.

On the other hand, if it is shown that plaintiff was deprived of property without due process, then the question of remedy will arise. If the discharge was unconstitutional because it could be said at the time of discharge that the positions were similar as a matter of law, then reinstatement with back pay would appear to be appropriate remedies. If the discharge was unconstitutional because at the time of discharge there existed disputed issues of fact concerning the similarity or dissimilarity of the positions, then it will be necessary to determine whether the positions are in fact similar or dissimilar. This determination might require a trial, or might be made on the basis of affidavits showing that certain questions of fact which could have been genuinely disputed *at the time of the discharge* have now been cleared up and cannot *now* be genuinely disputed. If the positions are in fact similar, then here again reinstatement with back pay would appear appropriate. If the positions are in fact dissimilar, then we must assume that plaintiff would eventually have been discharged in any event even if a hearing had been provided, and plaintiff will consequently be entitled to only nominal damages.

## IV. POSSIBILITY OF ABSTENTION

■ In *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court held that a federal district court should abstain from ruling upon federal constitutional issues which might be rendered moot or placed in a different posture by state court determination of pertinent state law. In *England v. Louisiana State Bd. of Med. Exam.*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the Court held that when a federal district court applies *Pullman* abstention, the plaintiff may bring a state court action, inform the state court that he intends to reserve final determination of federal legal issues and facts relevant to such issues for the federal court, and return to federal district court at the conclusion of the state proceedings.

In the instant case, it is impossible to determine at this point whether resolution by state courts of open state law issues could render plaintiff's constitutional claims moot or present them in a different posture. We will therefore allow the parties to submit further papers on this question. If the facts concerning the similarity of the positions were clear at the time of discharge but the state law concerning the definition of "similar" is ambiguous, this would appear an appropriate case for *Pullman* abstention. If the facts were unclear at the time of the discharge and the state law is still unclear, *Pullman* abstention would probably serve little purpose. This is so because the issues of fact and issues of state law may be heavily intertwined. Since the plaintiff can reserve factual issues for determination by this Court, and since issues of fact and issues of state law may be intertwined, it would be difficult for a state court to make a definitive determination of state law. Finally, if the state law is not ambiguous, *Pullman* abstention would of course not apply.

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Court held that "abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (summarizing *Burford* holding). The *Burford* doctrine applies even in cases involving issues of federal law as well as state law. *Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir.1980). We will allow the parties to submit papers on whether *Burford* abstention is appropriate in the instant case.

## V. CONCLUSION

Defendants' motion to dismiss pursuant to the *Parratt* doctrine is denied.

SO ORDERED.