Deborah **ELMENDORF**, Plaintiff,

v.

Donna **HOWELL**, Jackie Maier, Ted Davis and Gordon Larson, Individually and as members of the Windham–Ashland–Jewett Central School District Board of Education, Joseph Bonita, Individually and as the former Superintendent of the Windham–Ashland–Jewett Central School district, Janet Bain, as Assistant Superintendent of the Windham–Ashland–Jewett Central School District, and the Windham–Ashland–Jewett Central School District Board of Education, Defendants.

No. 95–CV–1613.

United States District Court,
N.D. New York.

May 5, 1997.

Walter, Thayer Law Firm, Albany, NY, for plaintiff; Lanny E. Walter, of counsel.

Ainsworth, Sullivan Law Firm, Albany, NY, for defendants; Robert Ruslander, of counsel.

### MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

### A. Procedural History

On February 18, 1997, plaintiff moved for summary judgment pursuant to Federal Rule 56 asserting that she was entitled to a due process hearing prior to her termination as a

tenured school principal, and that as a matter of law she was entitled to the position of Assistant Superintendent for the Windham–Ashland–Jewett Central School District. On that same date, the defendants, in their official and individual capacities, cross-moved pursuant to Federal Rule 12(b)(6), dismissing the plaintiffs complaint, and Federal Rule 56 granting summary judgment on the grounds that the causes of action alleged against the defendant's lacked merit as a matter of law and that there were no question of fact requiring a trial. On February 28, 1997, the defendants also made a motion pursuant to Federal Rule 12(b)(6) to dismiss the complaint as against the individual defendants, and Federal Rule 56 granting summary judgment on the grounds that the individual defendants were entitled to good-faith immunity from liability.

### B. Facts

The plaintiff is a former tenured Principal of the public school, grades K to 12, operated by defendant Windham–Ashland–Jewett Central School District ("WAJ"). In an effort to save money and consolidate the responsibilities of three positions into two, WAJ abolished the positions of Building Principal and Elementary Coordinator, and created the position of Assistant Superintendent. The plaintiff was not hired for the newly created position.

This case arises from the plaintiff's claims that (1) she was not given a pre-termination hearing before being, in her opinion, discharged from employment from a tenured position, in violation of her due process rights as secured by the Fifth and Fourteenth Amendments of the United States Constitution, and (2) she was not hired as the Assistant Superintendent in alleged contravention of New York Education Law § 2510(1) which requires that tenured employees whose positions are abolished must be hired for a subsequently created position with similar duties.

The defendants claim that the positions of Building principal and Assistant Superintendent are dissimilar. In general, the defendants allege that there are additional responsibilities connected to the new position, and that the Assistant Superintendent position requires additional certification not required by the Building Principal position. Moreover, the defendants contend that the plaintiff was afforded the opportunity to speak directly with the Superintendent or write to her concerning the Assistant Superintendent position, but declined. It is the defendants' position, therefore, that the plaintiff has received all the process she is due. The Court now turns to the issues presented.

## II. DISCUSSION

### A. Standard For A Motion For Summary Judgment

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & Hudson Rwy. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990), *quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994), *quoting,* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed.1983). However, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Azrielli,* 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be

decided by the Court on summary judgment. *Id.; See, e.g.,* Fed.R.Civ.P. 56(e), 1963 Advisory Committee Note; *Agosto v. INS,* 436 U.S. 748, 98 S.Ct. 2081, 56 L.Ed.2d 677, (1978); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–491, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989) 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed.1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

## B. Res Judicata and Collateral Estoppel

Defendants contend that the common-law preclusion principles of res judicata and collateral estoppel apply to foreclose plaintiff from relitigating an issue previously decided by the Education Commission. Specifically, defendants assert that the doctrine of collateral estoppel bars plaintiff from relitigating the finding made by the Education Commissioner that the plaintiff was not entitled to the new position of Assistant Supervisor, because that position was dissimilar from her previous position as Building Principal. Plaintiff, in turn, responds that collateral estoppel should not be applied to the present case because the proceedings precipitating the decision of the Education Commissioner failed to provide plaintiff with a full and fair opportunity to fully litigate this issue.

■ It is settled law that when a state administrative agency "acting in its judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), "federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226–3227, 92 L.Ed.2d 635 (1986); *see also Astoria Federal Savings and Loan Ass'n v. Solimino,* 501 U.S. 104, 105, 111 S.Ct. 2166, 2168, 115 L.Ed.2d 96 (1991) (indicating courts favor application of res judicata and collateral estoppel to administrate agency decisions). These preclusion principles serve the objectives of both promoting federalism and national unity, as well as enforcing repose. *University of Tennessee,* 478 U.S. at 798–799, 106 S.Ct. at 3226.

■ The state courts of New York will apply the doctrines of res judicata and collateral estoppel to administrative decisions provided that certain threshold requirements are satisfied. *See, e.g., Allied Chemical v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 277, 532 N.Y.S.2d 230, 232, 528 N.E.2d 153, 154–155 (1988). The general requirements for collateral estoppel under New York law are that the issue must be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought was accorded a full and fair opportunity to litigate the issue in the prior proceeding. *See, e.g., Id.*

■ In addition to these initial requirements, the doctrine of collateral estoppel will not be applied to a decision made by an administrative agency unless the circumstances support a determination that the administrative agency was acting in a "quasi-judicial" character. *Id.* In order to determine whether an administrative agency was acting in a "quasi-judicial" capacity, it is necessary to examine four factors; namely: (1) did the agency have statutory authority to adjudicate the matter, (2) if so, were the procedures used adequate to ensure the parties were able to completely "air out" the issues, (3) did the parties expect the decision to be binding, and (4) would giving preclusive effect to the determination be consistent with the overall scheme of the agency. *Id.* The failure to establish any single factor precludes application of the doctrine.

■ It is as to the second factor, that the Court finds that the determination by the Education Commissioner was not made pursuant to a "quasi-judicial" process. The plaintiffs appeal was made on the paper record. No witnesses were called, and no evidentiary hearing held. In fact, as pointed out by the plaintiff, 8 N.Y.C.R.R. § 276.2(d)

prohibits such a hearing. Accordingly, the Court will not collaterally estop the plaintiff from litigating the issue of whether the positions of Principal and Assistant Superintendent are similar or not, an issue decided by the Education Commissioner. Thus, the defendant's cross-motion for summary judgment is, to the extent stated herein, denied. *Compare Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 503, 478 N.Y.S.2d 823, 828, 467 N.E.2d 487, 492 (1984) (Collateral estoppel appropriately applied when plaintiff had previously testified and cross-examined defense witnesses).

### C. Similarity of Positions

Having found that the defendant's cross-motion for summary judgment should not be granted on the basis of collateral estoppel or res judicata, the Court turns to the issue of whether the plaintiff was entitled to the position of Assistant Superintendent.

New York Education Law § 2510(1) (McKinney's 1995), on which the plaintiff relies, provides

> If the board of education abolishes an office or position and creates another office or position for the performance of duties similar to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office or position thus created without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled.

■ It is undisputed that the plaintiff's position, Building Principal, was abolished. It is undisputed that the position of Assistant Superintendent was created subsequent to the abolition of the Principal's position. The issue contested is whether the two positions are sufficiently similar or dissimilar to warrant summary judgment in favor of either the plaintiff or defendants. "The test of whether the duties of the two positions are in fact similar is whether more than 50% of the functions to be performed by the incumbent of the new position are those which were

performed by the [plaintiff] in her old position." *Greenspan v. Dutchess County Bd. of Co-op. Educ. Servs.,* 96 A.D.2d 1028, 1029, 466 N.Y.S.2d 430, 433 (2d Dep't 1983) (and cases cited therein). Each claims that the facts compel a decision in their favor. The Court, however, finds that the issue is one best left to the fact-finder.

■ The plaintiff alleges that the two positions are more alike than different, and points to a comparison of the job descriptions, and the affidavits of Elaine Mattice, Opel Delong, and Eugenie Brignoli, employees at the school, in support. The defendants allege that the Educational Commissioner has already found that the positions are not similar. Although the defendants do not set forth before this Court precisely why the positions are not similar, it is clear from the papers submitted that the defendants agree with the Education Commissioner and contend that there are four areas of responsibility and accountability for the Assistant Superintendent position that were not part of the Principal position; (!) responsibility for the business office, (2) district purchasing agent duties, (3) responsibility for the elementary compensatory education program, and (4) supervisory responsibility for the home instruction program. In addition to imposing greater responsibilities than that of the position of Building Principal, the Assistant Superintendent position also allegedly requires additional certification.[1] Thus, the Court cannot say that reasonable minds would not differ as to the import of either sides' allegations. *See Bryant,* 923 F.2d at 982. Rather, such determinations must be left to the trier of fact. Accordingly, plaintiff's motion for summary judgment on the issue of the similarity of the positions of Principal and Assistant Superintendent must be denied.

### D. Requirements of Due Process

The plaintiff also claims that the defendants violated her due process rights by failing to conduct a pre-termination hearing. The defendants claim that the plaintiff was

---

1. Principal requires School Administrator and Supervisor certification, and Assistant Superintendent requires, in addition, School District Administrator certification.

not terminated, but rather that her position was eliminated. However, even if the plaintiff was terminated, the defendants claim that she received all the process she was due.

 Although the Constitution protects property interests, it does not create them. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State law therefore guides the Court in deciding whether a plaintiff possessed only an unprotected unilateral expectation of employment, or instead had a constitutionally-protected "legitimate claim of entitlement." *Id.*

It is not contested that "[t]enure, once conferred, is a property interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Blum v. Schlegel,* 18 F.3d 1005, 1014 (2d Cir.1994) (citations omitted). The plaintiff was tenured, and pursuant to New York Educational Law § 3012(2) (McKinney's 1995) had a property interest in her position. The issue contested is whether the plaintiff was entitled to a pretermination hearing. The defendants claim that the plaintiff wasn't terminated—her position was abolished—and thus, she is not entitled to a pre-termination hearing. The defendants also claim that the plaintiff was only entitled to post-deprivation due process, after she was refused the Assistant Superintendent position. As to the process afforded the plaintiff, she was offered an opportunity either to meet in person with Dr. Bonita, the school Superintendent, or submit written proof of her entitlement to the Assistant Superintendent position. The plaintiff declined.

 After a review of the relevant case law, the Court cannot find as a matter of law that the plaintiff was not entitled to a pretermination hearing. Although it seems clear that under New York law, when a position held by a tenured individual is *abolished* no pre-termination hearing is required, *see Mitchell v. Board of Education of Great Neck Public Schools,* 40 N.Y.2d 904, 389 N.Y.S.2d 354, 355, 357 N.E.2d 1008, 1009 (1976); *Beers v. Nyquist,* 72 Misc.2d 210, 211, 338 N.Y.S.2d 745, 746 (Sup.Ct. Albany County 1972), the Court finds that when there is a question of fact as to the similarity of the subsequently created position, the Court should not dispose of a concomitant due process claim on summary judgment. *See DeSimone v. Board of Educ., South Huntington Union Free School Dist.,* 604 F.Supp. 1180, 1184 (E.D.N.Y.1985).

In *Mitchell,* it was held that no hearing is required when a teacher's position is abolished. *See* 40 N.Y.2d at 904, 389 N.Y.S.2d at 355, 357 N.E.2d at 1009 Similarly, in *Beers,* the Court held that when the Director of Guidance position was abolished and the duties reassigned, there was no right to an evidentiary hearing prior to removal. *See* 72 Misc.2d at 211, 338 N.Y.S.2d at 746. However, in *DeSimone,* the Court stated that the

> [p]laintiff can prove that [she] has been deprived of property without due process if [she] demonstrates either (1) that at the time of the plaintiffs discharge there existed genuine factual issues bearing upon the similarity or dissimilarity of the positions; or (2) that at the time of plaintiff's discharge it could be said as a matter of law that the positions were similar within the meaning of Education Law § 2510(1). Defendant can prove that there was no deprivation of property without due process if it can show that at the time of the discharge it could be said as a matter of law that the positions were not similar within the meaning of Education Law § 2510(1).

604 F.Supp. at 1184. That is the precise material factual issue identified by the Court above. Accordingly, the Court must deny the the plaintiff's motion and the defendants' cross-motion for summary judgment as to the plaintiff's due process claim.

### E. Qualified Immunity

The defendants cross-move for summary judgment on the basis of qualified immunity. More particularly, the defendants claim that either the governing law was not clearly established at the time of the alleged wrongful

acts, or that the defendants actions were reasonable and conducted in good faith.

 As this case has stated on many occasions, it is well-settled that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Moreover, generally defendant officials are charged with knowledge of relevant decisional law. *See, e.g., Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("Prison officials are charged with knowledge of relevant decisional law."). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990). Accordingly, the subjective beliefs of the defendants are irrelevant to the Court's determination. *Finnegan v. Fountain,* 915 F.2d 817, 822 (2d Cir.1990). For an action of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

 In determining whether a particular right was clearly established, courts in this Circuit consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable Circuit Court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991); *see also, Prue v. City of Syracuse,* 26 F.3d 14 (2d Cir.1994). The Court finds that it has long been established that tenured educators/administrators are entitled to a pre-deprivation hearing when terminated from a position. *See DeSimone,* 604 F.Supp. at 1184. More-

over, it is clear that creating a position with a different title, but substantially similar responsibilities also runs afoul of the dictates of due process. *See Id.* Thus, the Court must determine if it was objectively reasonable, in light of existing law, for the defendants to have abolished the plaintiff's position, effectively if not technically terminating her employment, without a pre-termination hearing.

 The qualified immunity defense will protect a state actor from suit if it was objectively reasonable for that actor to believe that his actions were lawful at the time of the challenged act. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–3040. This so-called "objective reasonableness test" will be met "if 'officers of reasonable competence could disagree' on the legality of the" defendants' actions. *Lennon,* 66 F.3d at 420. In Lennon, the Second Circuit stated that "if the court determines that the only conclusion that a rational jury could reach is that reasonable officers, the defendants herein, would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." 66 F.3d at 421. The inquiry involves a legal question, to wit objective reasonableness, notwithstanding the fact that the Court must focus on the particular facts of the case. *Id.* at 420–21. However, the Court cannot conclude that no reasonable jury would find that reasonable officers wouldn't disagree about the legality of the their conduct under the circumstances. The primary reason for the Court's conclusion is the fact that there is a factual issue as to whether the two positions of Principal and Assistant Superintendent are similar. Without resolution of that issue, a matter within the province of the fact finder, the Court cannot determine the issue of qualified immunity. Accordingly, the defendants' cross-motion for summary judgment on the basis of qualified immunity is denied. However, the defendants may submit proof of such defense at trial.

## III. CONCLUSION

For the reasons stated herein, the Court hereby DENIES the plaintiff's motion for summary judgment in all respects, and fur-

ther DENIES the defendants' motion for summary judgment in all respects.

**IT IS SO ORDERED.**